******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

FRANK CZAJKOWSKI ET AL. *v.* YMCA OF
METROPOLITAN HARTFORD, INC.
(AC 35085)

Lavine, Sheldon and Pellegrino, Js.

*Argued January 9—officially released April 15, 2014*

(Appeal from Superior Court, judicial district of
Ansonia-Milford, Doherty, J.)

*Alinor C. Sterling*, with whom were, *Cynthia C. Bott*,

and, on the brief, *David M. Bernard* and *J. Craig Smith*, for the appellants (plaintiffs).

*Michael T. Ryan*, with whom, on the brief, was *Maciej A. Piatkowski*, for the appellee (defendant).

*Opinion*

PELLEGRINO, J. In this action for damages for personal injuries, the plaintiff Frank Czajkowski[1] appeals from the judgment of the trial court rendered after a jury verdict in favor of the defendant, YMCA of Metropolitan Hartford, Inc., doing business as YMCA of Greater Hartford. The plaintiff claims that the court improperly (1) precluded the testimony of his expert witness, and (2) permitted the defendant's lay witness to testify as to her opinion.[2] We conclude that the court did not abuse its discretion by precluding the expert's testimony or by admitting the lay witness's testimony. We therefore affirm the judgment of the court.

The jury reasonably could have found the following facts. From April 25, 2005, to April 27, 2005, groups of eighth grade students from Derby and Hartford attended an overnight outing at Camp Jewell, a campground in Colebrook owned by the defendant. On the second day of the outing, April 26, the plaintiff, who was fourteen years old, had congregated with other students outside of the dining hall after lunch. The students were waiting to be sent to their next activity. The area where the plaintiff stood was enclosed by a split rail fence. Near the intersection of two sides of the fence was a stone engraved with the word "unless" (unless stone) which, in the spring and summer, is surrounded by flowers.[3] The portion of the fence surrounding the unless stone was approximately eighteen inches high. On the other side of the fence was a path that led to "Mount Wood," a climbing tower. Raymond Zetye, the executive director of Camp Jewell, testified that the purpose of the fence was to prevent people from walking on the flowers that grow around the unless stone.

After all of the students in the plaintiff's group had gathered in the vicinity of the unless stone, a camp counselor said that the group was going down the path to Mount Wood. In order to do so, the students, including the plaintiff, had to maneuver around the fence to reach the path that led to Mount Wood. Some students walked around the fence, while others either stepped or jumped over it. The plaintiff elected to jump over the fence but did not clear the top rail and, as a result, fell and struck his head on the ground. The plaintiff brought the present action seeking to hold the defendant liable for his injuries.[4] The matter was tried to a jury, which returned a verdict in favor of the defendant. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff asserts that the court improperly precluded his expert witness from testifying. The plaintiff's expert, Anthony Storace, has a master's degree in mechanical engineering, and was experienced in acci-

dent investigation and reconstruction. Storace visited the site of the plaintiff's fall, conducted an investigation, and produced a report detailing his findings. The report described the fence in question: "The subject fence provides a pedestrian barrier intended to prevent pedestrians from walking from [the area of the unless stone to the surrounding paths]. . . . The fence was apparently provided to prevent pedestrians from traversing the raised edges of the walkway step, which presents a tripping hazard. . . . Although the fence may have been provided to divert pedestrian traffic, the design of the area and the height of the fence created a condition in which it was foreseeable that pedestrians would surmount the fence, either by climbing or jumping. A fence intended as a barrier to pedestrian traffic should be at a height appropriate for such purpose." The report then referenced several building codes which direct that "guards," defined as barriers used to prevent falls, should be at least forty-two inches high.[5] On the basis of the information in the report Storace concluded that the subject fence, because it was being used to prevent pedestrians from tripping on the "raised edges" of the path, was a "guard" that should have been forty-two inches high.

The defendant filed a motion in limine to preclude Storace's testimony, arguing that the testimony was not helpful to the jury because it was based on irrelevant building codes and the subject matter of the testimony was within the knowledge of the average person. The court granted the motion to preclude and, thereafter, the jury found in favor of the defendant. The plaintiff filed a motion to set aside the verdict, arguing that Storace should have been allowed to testify on the basis of his experience and the building code requirements that the fence was unsafe. The court subsequently denied the plaintiff's motion. In doing so, the court recounted the concession Storace had made in the plaintiff's expert disclosure statement that his opinion was based on codes governing a building's interior "guards," and that these codes do not directly apply to the fence at issue. The court determined that the building codes were irrelevant because they do not apply to the fence and, furthermore, found that the average person possessed sufficient knowledge to determine whether the fence at issue was unreasonably dangerous. On appeal, the plaintiff argues that the building codes are relevant to determining whether the fence was safe, and therefore whether the fence was unreasonably dangerous is beyond the knowledge of the average juror who is not familiar with the building code standards. As a result, the plaintiff reasons, the court improperly precluded Storace's testimony. We are not persuaded.

"We begin our review of this issue by setting forth the well established standard of review regarding a trial court's ruling on the admissibility of expert testimony.

[T]he trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . .

"[Our Supreme Court] recently articulated the test for the admission of expert testimony, which is deeply rooted in common law. Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues. . . .

"It is well settled that [t]he true test of the admissibility of [expert] testimony is not whether the subject matter is common or uncommon, or whether many persons or few have some knowledge of the matter; but it is whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience any aid to the court or the jury in determining the questions at issue. . . . Implicit in this standard is the requirement . . . that the expert's knowledge or experience must be directly applicable to the matter specifically in issue." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Sullivan* v. *Metro-North Commuter Railroad Co.*, 292 Conn. 150, 157–59, 971 A.2d 676 (2009); see also Conn. Code Evid. § 7-2. "The essential facts on which an expert opinion is based are an important consideration in determining the admissibility of the expert's opinion." *Glaser* v. *Pullman & Comley, LLC*, 88 Conn. App. 615, 624, 871 A.2d 392 (2005).

The issue on appeal is whether Storace's opinion improperly was precluded because the average juror has sufficient knowledge to determine whether the fence was reasonably safe. The plaintiff alleged in his complaint that the defendant breached the standard of care by, inter alia, "creating and/or maintaining a hazardous tripping instrument when alternative safer methods were available." The plaintiff then sought to introduce Storace's testimony regarding the various building codes to demonstrate that the fence was a "hazardous tripping instrument."

The plaintiff argues that *Considine* v. *Waterbury*, 279 Conn. 830, 905 A.2d 70 (2006), supports the proposition that Storace could rely on nonbinding building codes in rendering his opinion that the defendant breached the standard of care. In *Considine*, the plaintiff was injured by a glass window located next to a door. Id., 833–34. The plaintiff's expert testified that, according to the state building code, more durable glass should

have been installed in the window. Id., 855–57. The subject building, however, was built before the code was enacted, and the property owner was not required to change the glass in the window to conform to the code. Id., 856 n.15. Our Supreme Court concluded that the court properly admitted the expert's testimony regarding the building code as some evidence of the standard of care, even though the plaintiff was not required to comply with the code. Id., 867–68.[6]

In the present case, the plaintiff avers that Storace should have been allowed to testify that the fence was unreasonably dangerous based on the industry standards contained in the building codes. The codes upon which Storace relied in his report pertain only to the interior of buildings. The plaintiff argues that, nonetheless, *Considine* supports the proposition that Storace can testify that the building codes are evidence of the standard of care regarding the fence in question even though the fence was not required to conform to the codes. We disagree. It is significant that the relevant provision of the building code in *Considine* was precisely on point—the building code section governed the defendant's window. See id., 856 and n.15. By contrast, the plaintiff's expert in the present case relies on code sections that do not dictate the dimensions of an exterior fence, but govern "guards" inside buildings.[7] Furthermore, Storace's report relied in part on his determination that the fence at issue and a "guard" share the same purpose, to prevent a fall. Zeyte testified, however, that the purpose of the fence was not to prevent falls but to prevent people from walking on the flowers surrounding the unless stone. For these reasons, we agree with the court that the standards set by the codes upon which the plaintiff's expert relied are irrelevant as to whether the outdoor fence in question was reasonably safe.

Because the building codes were inapplicable, we conclude that the court did not abuse its discretion in precluding Storace's testimony. "Our Supreme Court has held that in cases involving questions of science and skill, or relating to some art or trade, experts are permitted to give opinions, however, that principle does not embrace those questions the knowledge of which is presumed to be common to all men." (Internal quotation marks omitted.) *Mroczek* v. *Kret*, 81 Conn. App. 128, 132–33, 838 A.2d 1012 (2004). If presented with the proper exhibits and testimony, it is within the court's discretion to conclude that the average person possesses sufficient knowledge to determine whether a fence is unreasonably dangerous. See id., 134 (within court's discretion to conclude person of ordinary experience could determine whether slope of walkway dangerous when "jury had the opportunity to assess the dangerousness of the sloping walkway through photographs of the area adduced as evidence at trial as well as through the testimony of the physical characteristics

offered by [the witnesses]"). The jury in the present case was presented with photographs of the fence in question and testimony regarding its physical characteristics. As a result, the court did not abuse its discretion in precluding Storace's testimony because it found that the jury possessed sufficient knowledge to determine whether the fence was unreasonably dangerous.[8]

## II

The plaintiff next claims that the court improperly allowed a lay witness to testify as to her opinion regarding whether the fence was dangerous. On direct examination, the defendant's counsel asked Jody Grove, the assistant director for Camp Jewell, whether she considered the fence dangerous. The plaintiff's counsel objected on the ground of relevancy, and furthermore noted that Grove was "not an expert."[9] The defendant's counsel then stated: "There was plenty of testimony on this by . . . Zeyte [during the plaintiff's presentation of evidence]." Thereafter, the court allowed the question, and Grove responded that she did not consider the fence to be dangerous.

We will not reverse a court's decision to allow lay witness opinion testimony unless the court has abused its discretion. *State* v. *Spigarolo*, 210 Conn. 359, 371, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989). When considering whether a court has abused its discretion, "we make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *Duncan* v. *Mill Management Co. of Greenwich, Inc.*, 308 Conn. 1, 13, 60 A.3d 222 (2013). "The general rule is that [nonexpert] witnesses must state facts and not their individual opinions, but there are exceptions to this rule as well established as the rule itself. . . . [T]he opinions of common observers in regard to common appearances, facts and conditions have been received as evidence in a great variety of cases." *Sydleman* v. *Beckwith*, 43 Conn. 9, 11 (1875); see also *State* v. *Schaffer*, 168 Conn. 309, 318–19, 362 A.2d 893 (1975). Our Supreme Court has recognized that "[e]very trial, as a rule, is filled with so-called opinion evidence from the nonexpert witness. . . . When such nonexpert opinion evidence will probably aid the triers in their search for the truth, it meets the ultimate test of admissibility, and is not to be excluded because it states the conclusion of the witness based upon his observation and knowledge." (Citations omitted; internal quotation marks omitted.) *MacLaren* v. *Bishop*, 113 Conn. 312, 314–15, 155 A. 201 (1931); see also Conn. Code Evid. § 7-1 ("[i]f a witness is not testifying as an expert, the witness may not testify in the form of an opinion, unless the opinion is rationally based on the perception of the witness and is helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue").

At issue is Grove's opinion that the fence was not dangerous. "The elements that enter into the question of reasonable safety are often numerous and difficult to describe; and for this reason it has long been the practice in this state to admit even the opinions of nonexperts, founded on their own personal knowledge, and in connection with facts stated by them, upon questions [regarding] whether a road is or is not in repair, or whether a bridge is sound and safe. . . . The exception to the general rule in such cases is grounded on necessity. . . . The facts are sometimes incapable of being presented with their proper force and significanc[e] to any but the observer himself. . . . Under these circumstances the opinions of witnesses must of necessity be received." (Citations omitted; internal quotation marks omitted.) *Ryan* v. *Bristol*, 63 Conn. 26, 38, 27 A. 309 (1893). Our courts previously have admitted lay witness opinion testimony regarding the safety of common objects that the witness has observed. *Seidel* v. *Woodbury*, 81 Conn. 65, 75, 70 A. 58 (1908) (this jurisdiction "permit[s] nonexperts to state an opinion in respect to conditions they have seen and have described in their testimony"); see also *Lunny* v. *Pepe*, 116 Conn. 684, 687, 165 A. 552 (1933) (ramp); *Campbell* v. *New Haven*, 78 Conn. 394, 395–96, 62 A. 665 (1905) (sidewalk); *Ryan* v. *Bristol*, supra, 38 (road); *Porter* v. *Pequonnoc Mfg. Co.*, 17 Conn. 249, 256–57 (1845) (dam).

In light of our precedent allowing lay witnesses to testify as to their opinion regarding the safety of common outdoor objects about which they have personal knowledge, such as roads, sidewalks and ramps, we conclude that the court did not abuse its discretion in allowing Grove's testimony that she did not consider the fence in question to be dangerous.[10] Grove's opinion that the fence was not dangerous was based on her regular observation of the fence and her experience as an employee of the camp. She testified that, at the time of the plaintiff's accident, she was familiar with the fence in question and walked by it on a regular basis. Although Grove could have testified to the facts regarding each and every observation and experience that she had in relation to the fence, due to the number of years she worked at the camp these accounts would be too "numerous and difficult to describe; and for this reason it has long been the practice in this state to admit . . . the opinions of nonexperts . . . ." (Internal quotation marks omitted.) *Ryan* v. *Bristol*, supra, 63 Conn. 38. We conclude, therefore, that the court did not abuse its discretion in allowing Grove's testimony.

Even if the court had abused its discretion in admitting Grove's testimony, that error was harmless and is not ground for reversal. An improper evidentiary ruling will only result in a new trial if the error was harmful "in the context of the totality of the evidence adduced

at trial." (Internal quotation marks omitted.) *Hayes* v. *Camel*, 283 Conn. 475, 489, 927 A.2d 880 (2007). We must take into account "whether the improperly admitted evidence is merely cumulative of other validly admitted testimony. . . . The overriding question is whether the trial court's improper ruling affected the jury's perception of the remaining evidence." (Citations omitted; internal quotation marks omitted.) Id., 489–90.

During the plaintiff's direct examination of Zetye, counsel asked: "Is there something about this fence to you that looks like it is going to be dangerous?" The witness responded that there was not. We conclude that Grove's testimony was cumulative of Zetye's because both camp employees opined that the fence was not dangerous. Because Grove's testimony was cumulative of the plaintiff's own witness, Zetye, even if Grove's testimony improperly was admitted any error was harmless.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Lisa Czajkowski filed the present action on behalf of her son, Frank Czajkowski, who was a minor at the time the action was commenced. Lisa Czajkowski also filed a separate claim for medical and educational expenses incurred as a result of the alleged negligence, and is a party to this appeal. For purposes of clarity in this opinion, however, we refer to Frank Czajkowski as the plaintiff.

[2] At oral argument before this court, the plaintiff waived his claim that the court improperly failed to take judicial notice of or charge the jury on General Statutes § 19a-420 et seq. governing "Youth Camps."

[3] The unless stone is a reference to the Dr. Seuss book, The Lorax. In the book, a stone engraved with the word "unless" is intended to convey the message that environmental problems will not improve unless the reader takes appropriate action.

[4] The plaintiff alleged that as a result of the fall he suffered a severe concussion, a closed head injury, amnesia, as well as mental and verbal impairment.

[5] Cited in Storace's report was the Connecticut State Building Code, codified at Regs., Conn. State Agencies § 29-252-1d, as well as The BOCA National Building Code (11th Ed. 1989), and R. Cote, The Life Safety Code Handbook (6th Ed. 1994).

[6] The building code was used as some evidence of the standard of care but not to support a negligence per se claim. *Considine* v. *Waterbury*, supra, 279 Conn. 867–68.

[7] For example, Storace's opinion was based in part on the State Building Code, Regs., Conn. State Agencies § 29-252-1d, whose scope is defined as: "[T]he construction, alteration, movement, enlargement, replacement, repair, equipment, use and occupancy, location, maintenance, removal and demolition of every building or structure or any appurtenances connected or attached to such buildings or structures."

[8] The plaintiff also claims that the court erroneously required that expert testimony be based on "objective standards" due to a "misguided" reading of *Mroczek* v. *Kret*, supra, 81 Conn. App. 128. We conclude otherwise. Our holding in *Mroczek* did not state than an expert's testimony must always be based on "objective standards." In light of the facts of that case we specifically held that because the expert's opinion was not based on any objective standards, it only rested on "knowledge . . . within the ken of the ordinary person." Id., 133. Similarly, the court in the present case determined that the building codes were inapposite and found that the remainder of Storace's testimony was based on knowledge within the ken of the average person. Accordingly, the court properly relied on *Mroczek*.

[9] On appeal, the plaintiff only pursues the claim that Grove's testimony was improper because it was a "lay opinion."

[10] The plaintiff also claims that the court erred in allowing Grove to testify on "the ultimate issue in the case." We disagree. Section 7-3 (a) of the

Connecticut Code of Evidence prohibits opinion testimony on an ultimate issue. Our Supreme Court has defined an ultimate issue as "one that cannot reasonably be separated from the essence of the matter to be decided [by the trier of fact]." (Internal quotation marks omitted.) *State* v. *Finan*, 275 Conn. 60, 66, 881 A.2d 187 (2005). One ultimate issue in this negligence claim was whether the defendant breached a duty owed to the plaintiff because, under the circumstances, the employees of the defendant failed to conduct themselves as reasonable persons. See *Considine* v. *Waterbury*, supra, 279 Conn. 858–59. Grove testified that she did not consider the fence dangerous, yet whether the fence was dangerous was not an ultimate issue in this case. Even if the fence had been considered dangerous, arguendo, the ultimate issue for the jury was how a reasonable person would have acted under those circumstances. Grove did not offer testimony on this ultimate issue.

—————————————————————