******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## J. B. *v.* C. B.[*]
## (AC 47360)

Clark, Westbrook and Flynn, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff had previously been dissolved, appealed from the trial court's judgment resolving certain motions for contempt and for modification of child support filed by the parties. The defendant claimed, inter alia, that the court improperly relied on incomplete or inaccurate financial disclosures in modifying the plaintiff's child support obligations. *Held*:

The trial court did not improperly rely on incomplete or inaccurate financial disclosures by the plaintiff in making the requisite child support calculations in conjunction with its downward modification of child support, as the defendant did not direct this court to anything in the record from which it could conclude that it was error for the trial court to credit the plaintiff's testimony that certain payments from his parents were not likely to continue indefinitely or that its decision not to include those payments as income constituted legal error or an abuse of its discretion.

The trial court did not improperly deny the defendant's motion for contempt, as the court, rather than ignoring what the defendant maintained to be extensive evidence of misconduct by the plaintiff, marked off the motion for contempt with the consent of the defendant because she was unable to identify a specific clear and unambiguous order of the court that the plaintiff failed to comply with or otherwise violated and the court simply concluded that such evidence was not relevant to the defendant's motion for contempt.

This court declined to review the defendant's claim that the trial court improperly modified child support without accounting for the extensive litigation between the parties that already had occurred, including the financial burden placed on the defendant, as the claim was inadequately briefed.

The trial court did not improperly admit unqualified expert testimony from the court-ordered reunification therapist, F, as this court concluded, on the basis of its review of the record, that the trial court only permitted F to testify as a fact witness regarding the parties' efforts to engage in reunification services as ordered by the court.

---

[*]In accordance with our policy of protecting the privacy interests of the victims of family violence, we decline to identify the parties or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2024); we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

This court declined to review the defendant's claim that the trial court made selective and inconsistent evidentiary rulings that violated her due process rights under either the state or federal constitutions, as the defendant abandoned that claim due to inadequate briefing.

This court declined to review the defendant's claim that the trial court failed to maintain judicial neutrality and disregarded ethical and safety concerns, as it was the defendant's burden to provide this court with an adequate record for review, which was lacking with respect to this claim.

The trial court did not improperly deny the defendant an opportunity to deliver closing arguments at the conclusion of an evidentiary hearing held on the plaintiff's motion for contempt, as the court gave the defendant great latitude to make whatever closing arguments she wanted and only stopped her when it determined that she was exceeding the scope of argument by attempting to introduce new evidence after the evidentiary portion of the hearing had concluded and, to the extent that the court placed limitations on the content of the defendant's arguments, the defendant provided no legal analysis from which to conclude that the court abused its considerable discretion in doing so.

Argued October 16, 2025—officially released April 28, 2026

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Nguyen-O'Dowd, J.*; judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Chadwick, J.*, granted the plaintiff's motion for modification of child support, denied the plaintiff's motion for contempt and marked off the defendant's motion for contempt, and the defendant appealed to this court. *Appeal dismissed in part*; *affirmed*.

*C. B.*, self-represented, the appellant (defendant).

*Opinion*

WESTBROOK, J. The defendant, C. B., whose marriage to the plaintiff, J. B.,[1] was dissolved in April, 2023, appeals from postjudgment orders of the trial

[1] The plaintiff did not file an appellee's brief or otherwise participate in the present appeal. Accordingly, we consider this appeal solely on the basis of the defendant's brief, the record, and the oral argument of the defendant.

court resolving certain motions for contempt and for modification filed by the parties regarding, inter alia, child support and reunification therapy.[2] The defendant claims that the court improperly **(1)** relied on incomplete financial disclosures in modifying the plaintiff's child support obligations, **(2)** ignored evidence of financial and other misconduct by the plaintiff in denying her motion for contempt, **(3)** made modifications that failed

---

[2] As reflected on the self-represented defendant's appeal form and in her appellate brief, she purports to appeal from decisions rendered by the court on January 8, 22 and 31, 2024. The court's January 8, 2024 orders resolved several pending motions for contempt as well as a motion for modification of child support. With respect to the court's January 22, 2024 ruling, the defendant describes this ruling as an order limiting approval of her fee waiver request for appeal transcripts to $100. Although the record shows that the defendant filed her fee waiver application on January 22, 2024, the court's order on that application was rendered the following day, on January 23, 2024. Regardless of the correct operative date of the order, we decline to review any claims related to the order on the fee waiver application because, as provided for in Practice Book § 63-6, "[t]he sole remedy of any party desiring the court to review an order concerning the waiver of fees, costs and security shall be by motion for review under [Practice Book §] 66-6." Whenever our rules of practice provide that a party's sole remedy for review of an order is by way of motion for review, the party cannot properly raise a claim challenging that order by way of direct appeal or amended appeal. See *Fenner* v. *Hartford Courant Co.*, 77 Conn. App. 185, 188, 822 A.2d 982 (2003) (plaintiff could not prevail on claim that trial court violated his due process rights by denying application for waiver of fees for transcripts of entire trial because he failed to avail himself of proper remedy for review of denial of fee waiver); *Santoro* v. *Santoro*, 33 Conn. App. 839, 841–42, 639 A.2d 1044 (1994) (dismissing claim regarding stay order raised in amended appeal because our rules provide that sole remedy for review of an order regarding stay is by motion for review). Similarly, the January 31, 2024 order from which the defendant appeals is a denial of a fee waiver application that the defendant filed in conjunction with an application for an emergency ex parte order of custody. She did not request a hearing before the trial court on the denied application, and, even if she had, any further review by this court regarding the fee waiver request is limited to a petition for review in accordance with General Statutes § 52-259b (d) and Practice Book § 78b-1. The defendant cannot obtain review of the court's fee waiver ruling in a direct appeal. Finally, to the extent that the defendant raises claims in her appellate brief directed at judgments of the trial court other than those from which she has appealed, those rulings are not properly before us on appeal and we decline to address any claim directed at them.

to account for prior litigation of the parties and the financial burden placed on the defendant, **(4)** admitted unqualified expert testimony, **(5)** made selective and inconsistent evidentiary rulings that violated the defendant's due process rights, **(6)** failed to maintain judicial neutrality and disregarded ethical and safety concerns, and **(7)** denied the defendant an opportunity to deliver closing arguments following a January 2, 2024 evidentiary hearing.[3] For the reasons that follow, we reject or decline to review the defendant's claims and affirm the judgment of the court.

The record reveals the following relevant facts, which were found by the court or are undisputed, and procedural history. In this highly contentious divorce action, the court, *Nguyen-O'Dowd, J.*, conducted a multiday trial that concluded on January 13, 2023. The court rendered a decision on April 26, 2023, dissolving the parties' marriage on the ground of irretrievable breakdown. On May 4, 2023, the court issued a corrected memorandum of decision.[4] With respect to custody of and parental access to the parties' two minor children, who were four and six years old at the time, the court awarded the parties joint legal custody of the children with the primary residence awarded to the defendant. The court's decision provided that the plaintiff would be permitted to file a motion to modify the custody orders and to request a parenting access schedule after he completed court-ordered reunification therapy.[5] The dissolution judgment incorporated by reference a prior reunification therapy order of the court rendered on December 22, 2022.[6] After

---

[3] We set forth the defendant's claims, to the extent they are properly before us, in the order and manner in which they appear in the body of her brief, which differs from the brief's statement of the issues.

[4] On May 31, 2023, the court issued additional clarifications and corrections to its May 4, 2023 corrected decision.

[5] The record indicates that, during the parties' marriage, there were instances of intimate partner violence by the plaintiff, and, on several occasions, referrals were made to the Department of Children and Families regarding the parties and the children.

[6] The December 22, 2022 order provided in relevant part: "The parties shall secure the services of Dr. Bruce Freedman as a reunification therapist. The parties are to cooperate with Dr. Freedman and sign

the dissolution trial, but before the court had rendered a decision, the plaintiff filed a pendente lite motion for contempt claiming that the defendant was in violation of the December 22, 2022 order. Although the dissolution court did not directly address this motion for contempt as part of the dissolution judgment, the court included in its final judgment additional orders pertaining to the defendant's ongoing obligations to facilitate the reunification efforts between the children and the plaintiff.[7]

As part of the financial orders attendant to the dissolution judgment, the court ordered the plaintiff to pay the defendant $225 per week in child support. The court also ordered the plaintiff to pay the defendant an additional $40 per week toward the satisfaction of an existing pendente lite child support arrearage of $9902. The court ordered that the defendant would retain the parties' marital home in East Hartford and that, beginning the following month, she was solely responsible for paying the mortgage, taxes, utilities, and insurance for that property. Neither party filed an appeal challenging the dissolution judgment or any of its attendant orders.

On June 1, 2023, the plaintiff filed a motion seeking a downward modification of the court's child support orders in which he asserted that there had been a substantial

---

any releases requested by Dr. Freedman . . . . The costs associated with the reunification therapist shall be split on a basis of 60 [percent]/40 [percent]. However, the plaintiff shall be responsible for the entire $2000 retainer. . . . The parties are to schedule with Dr. Freedman for the first available appointment. The parties shall not tell the children about reunification therapy. The children shall be made aware of the reunification therapy through a therapeutic provider."

[7] Specifically, the court ordered in relevant part: "The defendant shall not dictate where the reunification sessions shall take place. The defendant shall take all reasonable measures to ensure that the children are made available for sessions with Dr. Freedman and the plaintiff. . . . The defendant shall not schedule any appointments or activities for the children that conflict with appointments scheduled with Dr. Freedman. . . . The defendant shall document in writing and provide to the plaintiff and the reunification therapist the specific efforts that she has made to ensure that the children participate in reunification therapy and specific efforts to encourage the children if they are resistant. . . . The defendant's failure to comply with this court order shall result in her paying any missed or cancellation fees to Dr. Freedman."

change in circumstances because he had lost his job. The plaintiff also filed a motion for contempt related to the defendant's obligations with respect to the marital home.[8] On June 14, 2023, the defendant filed a motion for contempt in which she asserted that the plaintiff was in contempt regarding the court's orders pertaining to the marital home and asking the court, inter alia, to order the plaintiff to "bring the mortgage back to good standing including [by paying] all fees, all penalties and all attorney's fees charged by the mortgage company . . . ."

Following a hearing, on June 29, 2023, the court, *Klau, J.*, entered an interim order on the plaintiff's motion to modify child support. As part of that order, the court temporarily suspended the arrearage payments due under the dissolution judgment and directed the plaintiff to pay the defendant $160 per week in child support.[9]

On September 15, 2023, the defendant filed a second motion for contempt in which she argued that the plaintiff was not in compliance with various aspects of the financial orders issued in conjunction with the dissolution judgment or with the temporary orders issued on June 29, 2023. The defendant also argued that the plaintiff should be held in contempt for violations of the automatic orders applicable to all parties upon commencement of a dissolution action. See Practice Book § 25-5. The defendant claimed she had discovered these violations postjudgment.

Beginning on October 17, 2023, and concluding on January 3, 2024, the court, *Chadwick, J.*, conducted several days of hearings on the plaintiff's outstanding

---

[8] The plaintiff asserted that, "unbeknownst to all involved," the mortgage on the marital residence had gone into foreclosure as of May 3, 2023. The mortgage lender advised the parties that the loan could be reinstated either by making a lump sum payment of approximately $13,000 or by entering into a loan modification agreement. According to the plaintiff, the defendant refused to contribute any funds toward the lump sum payment despite being responsible for the mortgage, and she also refused to sign paperwork needed to modify the loan. The plaintiff viewed the defendant's inaction as a wilful violation of the May 4, 2023 court orders.

[9] As found by the court, this interim amount was within 15 percent of the presumptive amount payable pursuant to the child support guidelines.

motion for modification of child support and the parties' motions for contempt. On January 8, 2024, the court issued orders denying the plaintiff's motion for contempt, concluding that he had failed to show that the defendant had wilfully failed to comply with any clear and unambiguous order of the court. With respect to the motion for modification, the court granted the motion. It found that the plaintiff had proven a substantial change in circumstances and ordered the plaintiff to pay the defendant $183 per week in child support and an additional $37 per week until the existing child support arrearage was satisfied in full. That same day, the court marked off the defendant's motion for contempt.[10]

The defendant filed a motion to reargue/reconsider the court's January 8, 2024 orders to the extent that they modified the existing orders regarding reunification therapy between the minor children and the plaintiff, which modifications the defendant argued were not in the best interests of the children. The court denied the defendant's motion, following which the defendant filed the present appeal. Additional facts and procedural history will be set forth as necessary.

Before addressing the defendant's claims, we set forth the general standard that applies to our review of orders in domestic relations cases. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did [on the

---

[10] The court later addressed the ongoing issues regarding the mortgage and the marital home in a ruling on a separate motion for contempt filed by the defendant in which she had raised similar concerns. The court concluded that the defendant had failed to show that the plaintiff had failed to comply with any clear and unambiguous order of the court regarding the mortgage. Nevertheless, because the plaintiff had acknowledged during the hearing his belief that he owed the defendant for the nearly $10,000 that she had paid to reinstate the mortgage on the marital home, the court exercised its remedial authority and ordered the plaintiff to make $1000 quarterly payments to the defendant until she was fully reimbursed for her payments. See *O'Brien* v. *O'Brien*, 326 Conn. 81, 99–100, 161 A.3d 1236 (2017) (even in absence of finding of contempt, trial court has broad discretion to issue remedial orders).

basis of] the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Our deferential standard of review, however, does not extend to the court's interpretation of and application of the law to the facts. It is axiomatic that a matter of law is entitled to plenary review on appeal. . . . As has often been explained, the foundation for [our deferential] standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . ." (Citation omitted; internal quotation marks omitted.) *N. R.* v. *M. P.*, 227 Conn. App. 698, 713, 323 A.3d 1142 (2024).

I

The defendant first claims that, in making the requisite child support calculations in conjunction with its downward modification of child support, the court improperly relied on incomplete or inaccurate financial disclosures by the plaintiff. In particular, the defendant asserts that the plaintiff, in reporting his gross income, failed to properly account for certain monetary gifts, which included monthly payments that he received from his parents. We are not persuaded that the court's child support calculation was made on the basis of inaccurate or incomplete financial disclosures by the plaintiff.

The following additional facts are relevant to this claim. In her objection to the plaintiff's motion for modification, the defendant argued that the court should not order a decrease in child support in part because the plaintiff had testified during the dissolution trial "that his parents are able to pay for his financial obligations

including child support and his bills." On the plaintiff's financial affidavits filed with the court in support of the motion for modification, he disclosed that he was receiving $1500 per month from his parents, although he did not include these payments in his calculation of his total gross weekly income. At the interim hearing on the motion for modification conducted by Judge Klau, the court raised sua sponte whether the disclosed payments by the plaintiff's parents should be included as income in calculating the presumptive amount due under the child support guidelines. The court determined, over an objection by counsel for the plaintiff, that it would include the parents' payments as income in calculating its interim order. The court made clear, however, that its interim ruling on the motion for modification was without prejudice to any issue being revisited by the court that rendered a final decision on the motion for modification.

The issue of the parents' payments to the plaintiff was again raised and argued at the subsequent hearing on the motion for modification before Judge Chadwick. The plaintiff testified at the hearing, consistent with his financial affidavits, that he received monthly payments of $1500 from his parents but that he did not consider those payments to be a permanent income source and, thus, did not include them as regular income in his financial disclosure or on the child support guidelines worksheet submitted to the court.[11] In her closing argument on the motion for modification, the defendant argued that the court should consider the $1500 payments from the parents as income for purposes of calculating reasonable support payments in accordance with the child support guidelines. The plaintiff reasserted in his closing argument that the court should not consider the parents' gifts to be income because they were not permanent in nature. The court, in its memorandum of decision on the motion for modification, did not expressly address the issue of the parent's payments to the plaintiff or whether those payments were attributable as income. The court,

---

[11] Although the defendant argued to the court that the plaintiff had failed to report what she believed were other sources of income, as

however, utilized the child support guidelines worksheet provided by the plaintiff in calculating the presumptive amount of child support due under the guidelines, and that worksheet did not include the parents' payments as a component of the plaintiff's net weekly income.

It is axiomatic that both parties in a dissolution action have an obligation to provide the court with an accurate financial affidavit. See Practice Book § 25-30. "Our cases have uniformly emphasized the need for full and frank disclosure in that affidavit. A court is entitled to rely upon the truth and accuracy of sworn statements required by [Practice Book § 25-30] . . . and a misrepresentation of assets and income is a serious and intolerable dereliction on the part of the affiant which goes to the very heart of the judicial proceeding." (Internal quotation marks omitted.) *Reinke* v. *Sing*, 186 Conn. App. 665, 676, 201 A.3d 404 (2018). Section 46b-215a-1 (11) (A) (xxi) of the Child Support and Arrearage Guidelines provides that, in reporting gross income, parties must include, with limited exceptions not relevant here, any "regularly recurring gifts . . . ." Child Support and Arrearage Guidelines (2015), § 46b-215a-1 (11) (A) (xxi).

Although the defendant asserts that the court did not require full and accurate financial disclosures, that

reflected in the following colloquy, it appears that she failed to present sufficient evidence to convince the court of her assertion:

"[The Defendant]: So, I submitted his bank statements. So, I'm asking that you look and see that those numbers do reflect—

"The Court: Well, just because a deposit's been made in the account doesn't make it income.

"[The Defendant]: The plaintiff has failed to show that it is not income, and Judge Klau had said that the Venmo transfers—

"The Court: Well, we have to stop referring back to Judge Klau.

"[The Defendant]: Okay. Right. Well, I'm just saying it because this is what he had said, was that any gifts of money—

"The Court: Well—

"[The Defendant]:—are considered income, and the plaintiff is not proving that those are not gifts.

"The Court: Well, but you haven't proven that they are, either.

"[The Defendant]: They're significant, frequent, and regular transfers of large amounts of money.

"The Court: I don't know that."

assertion is not borne out by the record. Prior to granting the downward modification of the child support order, the parties each submitted the required financial disclosure affidavits, on which the court properly was entitled to rely in making its calculations under the child support guidelines. The plaintiff fully disclosed the payments that he had been receiving from his parents on his financial disclosure. If either party believed that the financial disclosure of the opposing party contained inaccuracies, they had a full and fair opportunity to raise and prove this at the hearing, either through witness testimony or by presenting other credible evidence. The defendant raised the issue to the court that the plaintiff should have disclosed and included as part of his income certain monetary gifts, including those he received from his parents.

In entering his interim order, Judge Klau had agreed with the defendant that, at that time, the parents' regularly recurring gifts constituted income to the plaintiff, and the court increased the plaintiff's income that he reported on his financial affidavit in calculating the presumptive amount of child support. Judge Chadwick, however, who was not bound by Judge Klau's interim ruling, reasonably could have agreed with the plaintiff that the payments from the parents were not likely to continue into the future and, thus, should not be considered as a component of his income. The court did not explain the reasoning behind its implicit ruling, nor was it asked to do so by the defendant. Nevertheless, because we must allow every reasonable presumption in favor of the correctness of the trial court's action, it is reasonable to infer that the court credited the plaintiff's testimony that the payments were not likely to continue indefinitely. The defendant has not directed us to anything in the record from which we may conclude that it was error for the court to credit the plaintiff's testimony or that its decision not to include the payments as income constituted legal error or an abuse of its discretion.

"Generally, appellate courts presume that the trial court knows and has applied the law correctly *in the*

*absence of evidence to the contrary. . . .* [I]t is the burden of the appellant to show to the contrary." **(**Citation omitted; emphasis added; internal quotation marks omitted.**)** *Havis-Carbone* v. *Carbone*, 155 Conn. App. 848, 867, 112 A.3d 779 (2015). The defendant has not done so here on the basis of the record provided. There is nothing in the record to support the defendant's assertion that the court's downward modification of child support was made on the basis of either incomplete or inaccurate financial disclosures. Accordingly, we reject this claim.

II

The defendant next claims that the court improperly denied her motion for contempt, arguing that the court ignored extensive evidence of financial and other misconduct by the plaintiff. The defendant's briefing of this claim is difficult to follow, addresses rulings not properly before us; see footnote 2 of this opinion; contains little to no relevant legal analysis and appears to misapprehend the court's action on her motion for contempt.

As part of its January 8, 2024 orders, the court did not deny the defendant's motion for contempt but rather marked the motion off. The defendant has not directed us to anything in the record that supports her assertion that the court ignored evidence or arguments she offered. On the contrary, the court was very solicitous of the defendant and the fact that she was a self-represented litigant. Our review of the pleadings and the transcript of the hearing show that the court marked off the motion for contempt with the consent of the defendant because she was unable to identify a specific clear and unambiguous order of the court that the plaintiff had failed to comply with or otherwise violated. The court told the defendant that the arguments she was advancing and the relief that she sought were more appropriately the subject of a motion to open and modify the dissolution judgment, something the court could not do in response to a motion for contempt. Thus, rather than ignoring what the defendant maintains to be extensive evidence of misconduct by the plaintiff, the court simply concluded

that such evidence was not relevant to the defendant's motion for contempt. Accordingly, we reject this claim.

III

The defendant also claims that the court improperly modified child support without accounting for the extensive litigation between the parties that already had occurred, including the financial burden placed on the defendant. We decline to review this claim because it is inadequately briefed.

"We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . [B]riefing is inadequate when it is not only short, but confusing, repetitive, and disorganized." (Internal quotation marks omitted.) *C. B.* v. *S. B.*, 211 Conn. App. 628, 630, 273 A.3d 271 (2022).

The defendant's briefing as to this claim is disorganized, contains no citations to applicable legal principles, sets forth no standard of review, and is generally difficult to follow. It is not the duty of this court to speculate as to the precise nature of a claim. Because we conclude that this claim is inadequately briefed, we decline to review it.

IV

Next, the defendant claims that the court improperly admitted unqualified expert testimony from Bruce Freedman, a licensed psychologist, who was the court-ordered reunification therapist. We conclude, on the basis of our review of the record, that the court only permitted Freedman to testify as a fact witness regarding the parties' efforts to engage in reunification services as ordered by the court. Accordingly, the defendant's claim that he provided improper expert testimony fails.

The following additional facts are relevant to our consideration of this claim. On October 17, 2023, the court began the evidentiary hearing on the parties' various motions, including the plaintiff's motion seeking to hold the defendant in contempt for allegedly failing to comply with orders requiring her to help facilitate reunification therapy between the plaintiff and the parties' minor children. See footnotes 6 and 7 of this opinion. On that same date, the defendant filed a motion in limine asking the court to preclude "any testimony or exhibits presented by [Freedman] . . . in any capacity, be it layperson, fact witness or expert." The defendant argued, inter alia, that Freedman was biased against her, and that his role as a court-appointed therapist should preclude him from giving any opinion testimony, particularly with respect to issues of parental alienation and potential modification of the court's custody orders.

Because Freedman was not scheduled to appear until the next scheduled hearing date, the court took up the defendant's motion in limine at the end of the day. After hearing from the parties, the court issued the following ruling from the bench: "Well, the court's afforded the plaintiff great latitude in pursuing a motion for contempt [regarding the reunification orders] that was filed pendente lite, pursuing it postjudgment. The issue of custody has to be raised through a motion to modify Judge Nguyen's memorandum of decision and judgment in this case. So, while Dr. Freedman might provide testimony with respect to the factual allegations with respect to the motion for contempt and the scheduling, the this, the that, and those things that the parties encountered, and why it did or did not move forward as ordered or anticipated, that might be relevant. But in reading your disclosure and the opinions that you intend to offer, that appears to go beyond the scope of anything the plaintiff has pending at this time. So, while the court will, at this time, deny the motion in limine and permit Dr. Freedman to testify, *it's only with the backdrop that the court has just provided*, and we'll take up those issues as they arise during the hearing; that, if there is an objection

to relevance or the other issues that [the defendant] has raised here today, we'll address them as Dr. Freedman testifies." (Emphasis added.)

On October 24, 2023, the plaintiff called Freedman to testify and, after asking him questions regarding his background and experience as a licensed psychologist, the plaintiff moved to have him qualified as an expert in the field of reunification therapy. The defendant objected, noting her motion in limine. The court reiterated its prior ruling, stating: "We touched upon these issues last week when this issue came up. And the court has no issue with this witness testifying as to the witness' observations, dealings with the parties, and attempting to schedule these sessions . . . so that the court can determine whether there is compliance with the court order and whether a party can be held in contempt. But the court is not going to permit expert or opinion testimony with respect to . . . parental alienation and a recommendation with respect to custody. Those aren't issues raised by your motion for contempt. So, [to] the extent that this witness is a fact witness you may proceed as such, but his expert opinions are not relevant to the pending motion."[12]

The standard applicable to our review of a trial court's ruling on the admissibility of expert testimony is well established. "[T]he trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . . [Our Supreme Court] [has] articulated the test for the admission of expert testimony, which is deeply rooted in common law. Expert testimony should be admitted [if]: (1) the witness has a special skill or knowledge directly

---

[12] On several occasions, the trial court sustained objections to or otherwise disallowed testimony from Freedman that the court determined fell outside the limitations it had set, including during the defendant's cross-examination of Freedman, when she twice attempted to elicit an expert opinion from him.

applicable to a matter in issue, **(2)** that skill or knowledge is not common to the average person, and **(3)** the testimony would be helpful to the court or jury in considering the issues." **(**Internal quotation marks omitted.**)** *Czajkowski* v. *YMCA of Metropolitan Hartford, Inc.*, 149 Conn. App. 436, 441, 89 A.3d 904 (2014).

In the present case, although the court denied the defendant's motion in limine, it did so only to the extent that the defendant sought to preclude Freedman from testifying outright, even as a fact witness, regarding the parties' efforts to schedule and conduct the court-ordered reunification therapy. The court expressly indicated that it would not allow Freedman to provide expert testimony, including on the topics of parental alienation and custody matters, because those topics were not the subject of a motion currently before the court. Having reviewed Freedman's testimony, we are unconvinced that the record supports the premise of the defendant's claim. Specifically, on the basis of our review of the hearing transcript, and considering the arguments of the defendant, we are not convinced that the court allowed Freedman to provide improper or unqualified expert testimony.[13] We reject the defendant's claim to the contrary.

V

The defendant also claims that the court improperly made selective and inconsistent evidentiary rulings that violated the defendant's due process rights. We are not persuaded.

The following additional facts are relevant to the present claim. At the close of the hearing with respect to the plaintiff's motion for contempt, the defendant indicated that she wanted to admit certain exhibits in rebuttal to the testimony of Freedman. The court, over

---

[13] Because we conclude that the court did not permit Freedman to provide expert testimony, we necessarily reject the defendant's argument that the court failed to conduct a *Porter* hearing to assess Freedman's qualifications. See *State* v. *Porter*, 241 Conn. 57, 80–90, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998).

the objection of the plaintiff's counsel, admitted into evidence certain emails that the defendant offered. The defendant also sought to offer other evidence that the court did not admit. First, she offered several letters that had previously been admitted at the dissolution trial but predated the court's order that was the subject of the contempt motion. The plaintiff's counsel objected on hearsay grounds, and the court sustained the objections. The defendant next sought admission of certain clinical notes from the medical records of the children's therapists. The plaintiff's counsel objected, stating: "They're therapy notes. Private, privileged information. They're hearsay. The therapists aren't here and we're not waiving privilege, Your Honor."[14] The court again sustained the objection of the plaintiff's counsel.

To the extent that the defendant seeks to challenge the court's evidentiary rulings, such rulings "will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Martin* v. *Olson*, 226 Conn. App. 392, 405, 318 A.3d 1067, cert. denied, 350 Conn. 902, 322 A.3d 1059 (2024). As we have often explained, we will not permit parties to attempt to dress up ordinary evidentiary issues in constitutional garb to obtain a more favorable standard of review. See *Hoffkins* v. *Hart-D'Amato*, 187 Conn. App. 227, 236, 201 A.3d 1053 (2019) ("[r]obing garden variety claims [of an evidentiary nature] in the majestic garb of constitutional claims does not make such claims constitutional in nature" (internal quotation marks omitted)).

In support of the present claim, the defendant first argues that the court admitted "unreliable hearsay and

[14] Counsel later elaborated that, because the parties had joint legal custody of the children, both parents would have to waive privilege with respect to the therapy notes and the plaintiff declined to do so.

opinion testimony from [Freedman] . . . ." As we already have concluded in part IV of this opinion, however, the court properly allowed Freedman to testify only as a fact witness. The court refused to qualify him as an expert, and he was not permitted by the court to provide opinion testimony. Furthermore, to the extent that the defendant contends that the court allowed Freedman to provide inadmissible hearsay testimony, the defendant has not identified any particular testimony, objection or ruling of the court for us to review. Accordingly, we are unable to review that aspect of the defendant's claim. See *Giordano* v. *Giordano*, 153 Conn. App. 343, 358, 101 A.3d 327 (2014) (claim that trial court improperly admitted hearsay evidence was not reviewable because appellant failed to direct our attention to any specific rulings by court).

The defendant next argues that the court improperly sustained objections to "numerous" exhibits, including those that she offered at the close of the hearing. The defendant generally contends in her brief that the exhibits "directly rebutted [Freedman's] testimony and revealed discrepancies in his statement about consent and interactions that never occurred." According to the defendant, many of the exhibits at issue previously had been "marked, authenticated, and entered [into] evidence" during other proceedings in this matter, including the dissolution trial.

Having reviewed the relevant portions of the transcript, we note that the court declined to admit the defendant's exhibits after sustaining objections made by the plaintiff's counsel on hearsay and other grounds. The defendant provides no legal analysis challenging the factual or legal bases for the court's rulings and, accordingly, we have no basis on which to conclude that the court abused its discretion in declining to admit the defendant's exhibits.

Finally, to the extent that the defendant is claiming that the refusal to admit her exhibits effectively deprived her of a meaningful opportunity to defend against the

motion for contempt and thus implicated her right to due process, she has provided no relevant constitutional analysis. As we stated in part III of this opinion, adequate briefing of an issue is required to avoid abandoning it. See *C. B.* v. *S. B.*, supra, 211 Conn. App. 630. We conclude that, to the extent the defendant has raised a viable due process claim under either the state or federal constitutions, she has abandoned her claim due to inadequate briefing. In short, the defendant's claim of selective and inconsistent evidentiary rulings fails.

## VI

The defendant claims that the court failed to maintain "judicial neutrality" and disregarded ethical and safety concerns. We decline to review this claim.

The disjointed arguments advanced by the defendant in support of this claim generally are repetitive of her criticism of the testimony provided by Freedman and assert that the trial court either should have precluded his testimony or found it not credible. She also makes a number of allegations that Freedman acted unethically by disclosing confidential or privileged communications, or violated contractual obligations, but fails to provide any factual or legal analysis or citations to the record that connect her allegations regarding Freedman to her claim that the trial court did not maintain neutrality or disregarded ethical or safety concerns. It is axiomatic that this court cannot pass upon the credibility of witnesses or weigh evidence. See *Lynch* v. *Lynch*, 13 Conn. App. 433, 437, 537 A.2d 503 (1988). "This court cannot find facts or draw conclusions from primary facts found, but can only review such findings to determine whether they could legally, logically and reasonably be found, thereby establishing that the trial court could reasonably conclude as it did." Id. It is the appellant's burden to provide this court with an adequate record for review, which is lacking here with respect to this claim. See Practice Book § 61-10. Accordingly, we decline to consider this claim further.

## VII

Finally, the defendant claims that the court improperly denied her an opportunity to deliver closing arguments at the conclusion of the January 2, 2024 evidentiary hearing. We disagree.

The following additional facts are relevant to this claim. On October 24, 2023, the court resumed the hearing with respect to the plaintiff's motion for contempt relating to reunification. The only witness who remained to testify was Freedman, and the defendant conducted an extensive cross-examination of him and subsequently was permitted to offer additional evidence in rebuttal to Freedman's testimony, including additional narrative testimony. After all evidence was presented, the court heard closing arguments from the parties. The court permitted the defendant to make lengthy closing remarks, and the court gave her considerable latitude as a self-represented party regarding the scope and content of her arguments. The court then concluded the hearing with respect to the motion for contempt, took the matter under advisement, and indicated that it would issue a written decision at a later date. Prior to adjourning for the day, however, the following colloquy occurred:

"[The Defendant]: Your Honor, I just—I didn't get to finish speaking on my closing. Would I be able to submit it as a brief or anything?

"[The Plaintiff's Counsel]: I object to that, Your Honor. I actually continue my objection [to] her entire closing as it is irrelevant and deals with things that have already been litigated prior to the order we're here to enforce.

"The Court: I thought we had finished. Are we not finished? . . . Do you need more time? You can't have it tonight because it's five o'clock.

"[The Defendant]: I just wanted to say that—just a couple more things . . .

"The Court: All right. Then you'll have to say it at another time. So, then what I'm hearing is that the

hearing is not finished . . . [and] at our next hearing you would like additional time to provide your further summation or closing. Is that what I'm hearing?

"[The Defendant]: Would I be able to say one paragraph? . . .

"The Court: Yes. So, we're adjourned until the next hearing and you'll be permitted to proceed at that time. . . . Court's not going to deprive you of time if you require it or request it. So, we'll stand adjourned, and we'll take it up at the next hearing."

At the next hearing date on January 2, 2024, the court permitted the defendant to make additional closing remarks, although the court made clear to the defendant that it was not opening the evidence and would not permit the defendant to provide additional narrative testimony, stating "[t]his is your summation or closing argument . . . not an opportunity . . . to testify anew about new issues." The court eventually stopped the defendant, stating: "Your closing statement is your final argument. It's not testimony. It's not evidence. We had concluded evidence. . . . So, have you read your one last paragraph?" The defendant responded, "[y]es, Your Honor," and the court indicated it was time to move on to the parties' other motions.

Except in certain limited circumstances in which argument on motions is a matter of right, whether to hear argument on a motion in civil matters is a matter left to the discretion of the court subject to appropriate constitutional limitations. See Practice Book § 11-18 (a).[15] It logically follows that, if a court conducts a hearing on a motion, placing reasonable limitations on the scope and duration of arguments or summations by counsel also is a matter of discretion for the court. See *Palkimas* v. *Lavine*, 71 Conn. App. 537, 548, 803 A.2d 329 ("[a] trial

---

[15] Practice Book § 11-18 (a) provides in relevant part that "[o]ral argument is at the discretion of the judicial authority except as to motions to dismiss, motions to strike, motions for summary judgment, motions for judgment of foreclosure, and motions for judgment on the report of an attorney trial referee and/or hearing on any objections thereto. . . ."

court is invested with a large discretion with regard to arguments of counsel"), cert. denied, 262 Conn. 919, 812 A.2d 863 (2002). Accordingly, we review the defendant's present claim under an abuse of discretion standard. "When reviewing claims under an abuse of discretion standard, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness . . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Jackson* v. *Water Pollution Control Authority*, 278 Conn. 692, 713, 900 A.2d 498 (2006).

In the present case, the trial court gave the defendant great latitude to make whatever closing arguments she wanted and only stopped the defendant when the court determined that she was exceeding the scope of argument by attempting to introduce new evidence after the evidentiary portion of the hearing had concluded. Having reviewed the transcripts of the proceedings in their entirety, we conclude that there is simply no support in the record for the defendant's assertion that the trial court refused to give her an opportunity to deliver closing arguments. The court, in fact, gave the defendant multiple opportunities to present her arguments, once after the close of evidence on October 24, 2023, and again at the January 2, 2024 hearing. To the extent that the court placed limitations on the content of the defendant's arguments, the defendant has provided no legal analysis from which to conclude that the court abused its considerable discretion in so doing. Accordingly, we reject the defendant's claim.

The appeal is dismissed as to those claims challenging the rulings on the plaintiff's applications for waiver of fees; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.